Next and final case for argument this morning is 15-1146, Trustees of Columbia Univ. v. Symantec Corporation David Gindler for Columbia Univ. Here with my colleagues Richard Gornholtz and Erin Tanner. This appeal deals exclusively with claim construction. I would like to start with the 544 and 907 patent families. There is one claim construction issue. It has to do with the term byte sequence feature. It is found in all of the claims of the patent and was found in all of the claims as it was to be filed in the patent. That claim was restricted by the district court to machine code instructions. That interpretation would essentially read out virtually every embodiment in the patent save possibly one. The problem with the district court's construction is it violates several well-established rules of claim construction. Are you suggesting that the meaning of that phrase is different in the provisional application and in the final patent? The provisional application doesn't define the phrase. What's the answer to my question? Does it have a different meaning in the two? Well, the phrase byte sequence feature actually is not used in the provisional application. The term byte sequence is used in the provisional application. There are three embodiments which are discussed. It's used under the heading of features, right? It's used in a discussion of features, but the discussion of byte sequence in the provisional application is under a heading called using hex dump to extract byte sequence features. I was going to answer Judge Dyke's question. The heading of that particular section of the paper says byte sequences using hex dump. Now hex dump is in fact a particular embodiment which is described in the patent. It's described as an exemplary embodiment in the patent, not as a definition. In the language of the provisional, which is a publication, it says the following. We use hex dump, a tool that transforms binary files into hexadecimal files. The byte sequence feature is the most informative because it represents the machine code in an executable instead of resource information like live BFD features. By the way, that sentence does not appear in that way in the specification. It is changed in the specification, but more importantly, the paragraph goes on and says, Secondly, analyzing the entire binary gives more information for non-PE format executables than the strings method. This is a comment on looking at the entire binary. The entire executable using hex dump gives you more information. And the use of hex dump in the actual specification of the patent is just one exemplary embodiment. You can find that in the 544 patent at column 6, line 7 to 8 where it says, In the exemplary embodiment, hex dump was used in the feature extraction step. It's just one embodiment. And one of the rules that we have learned from claim construction is we do not read limitations from a particular embodiment into the claim. Look, coming back to the provisional application 3586. It says byte sequences are the last of a set of features. So they're talking about a byte sequence feature, which is the language used in the claims. And then it says the byte sequence feature, and it does use that phrase that I referred to, is the most informative because it represents the machine code in an executable instead of resource information like live BFD features. That seems to say that byte sequence feature is machine code. It says why it's informative. It says that this line says the byte sequence feature is the most informative because it represents the machine code in an executable. But then it goes on to say – So it does use the word byte sequence feature, right? It does in that one part. I thought you said earlier. Right. I misspoke. It does use it in this one part. But is this the definition of byte sequence feature in the specification of the patent? And I think the answer to that question, Your Honor, is no. So the answer to my earlier question is your contention is the meaning changed between the provisional and the final. No, I don't think that's right, Your Honor, because if you look at the provisional, the provisional looks at three embodiments. Actually, the three same embodiments, which are discussed in the specification. And those three are looking at extracting byte sequence features using hex dump. A second embodiment, which involves extracting another kind of byte sequence features, which are byte strings representative of resources, which are referenced by the executable. And then a third, which are called strings or printable strings. And the paper looks at each one of these and compares their utility in trying to identify malicious aspects of programs using a rule classifier set. And it talks about how they compare to each other. Here, you have two sentences which talk about byte sequence. Let's assume we disagree with you about this claim construction. We think the district court got it right. Does that mandate his conclusion on invalidity? I found that invalidity argument or decision kind of hard to follow. Do you agree that if the district court adopted the right claim construction that your patent is also invalid under 112? It's very hard to understand, Your Honor, because the court did not give much guidance in terms of what the court meant. As far as I can tell, the court was saying that machine code instructions are a different animal than byte strings representative of resources referenced by the executable. And therefore, one can't be a subset of the other. That's the most I can discern from the claim court. Suppose we were to say that the district court, as Judge Hughes said, got the claim construction right. Is there an argument that under that claim construction, there is no indefiniteness problem here and that the claims are still valid? Your Honor, I think the answer is yes, but it's very hard to say because there is so little that's given to us. Well, I'm not hearing what the district court said about it. I'm asking what you're arguing. Let's say you lose on the claim construction. Do you think the claims are still valid? I think the answer is yes because I think there are circumstances in which machine code can be involved with byte strings, which are representative of resources referenced by the executable. But that was an issue that was never addressed in that way by the district court. Here, Your Honor— Did you make that argument in the brief, the appeal brief in blue? Because I don't see it. I mean, you obviously challenged the claims construction. You challenged— The argument that we fundamentally made in our brief on appeal was that if the district court's claim construction of limiting byte sequence feature to machine code instruction is wrong, then his 112 ruling is wrong. Correct. And that's what we limit ourselves to. Did you make the alternative argument that even if it's right, there's still an issue with respect to whether or not the claim is indefinite? We did not take that additional step, Your Honor, because we didn't think we had to. We think that the language of the specification— So the invalidity decision rises or falls with the claim construction? In terms of what's been presented to the court, I believe that is correct. Again, we don't know all the district court's reasoning. We just have the two-page decision. But the short answer is you didn't give us any reason to reverse the invalidity decision if we agree with the claim construction. That is correct, Your Honor. But what I want to— Can I lead you to the other four patents from Southern? Would you mind if I took just one second? Go ahead. Because it's important to look at the final specification, and it's important to look at how the discussion of this hex dump utility is described in a different way, in a more fulsome way, in the specification, the final specification, which I believe deserves respect. Okay, let's move on to the other four patents. I found it really confusing on this, and I had an insight, and that is that both sides would like all four patents to stand or fall together. And, in fact, when you look at it, they don't. There are two different specifications for two sets of patents, and each side has really good arguments with respect to one set of patents and a not-so-good argument with respect to the other. So what I'm really asking you is, isn't there a distinct possibility here that the district court got the claim construction right with respect to the 084 and 306 patents and got it wrong with respect to the 115 and 322 patents? Well, let me put it to you this way, Your Honor. I think, first, the district court definitely got it wrong on the 115 and the 322. Try to answer my question. I thought I was, but I'll start with the 084 and the 306. It is possible to distinguish between the two. They don't necessarily stand or fall together. In fact, I think they don't stand or fall together. They have completely different specifications. They're not part of the same patent family. They do have some common inventors, but that's not enough to treat them. The words of the claims are totally different. They address completely different things. The 115 family of patent is about detecting anomalous program executions. The 084 family is about detecting intrusions into the operation of a computer system. The words that are found in the claims of the 084 are not found anywhere in the language of the 115 and the 322. Okay, so why was he wrong about the 084 and the 306? Because it seems to me that the specification and the language of the claims strongly supports his interpretation that you're creating the model based on normal computer usage. I think the mistake that the district court made was turning the claim into a closed set. In other words, what the court did is it converted claim elements presiding what must be present into negative limitations excluding everything else. Because the specification tells you to create the model using normal computer usage. And in order to practice – Wait, wait, wait. Sorry? Rather than attack data, right? And I agree with that. And in order to practice this claim, that's what you have to do. There's no debate about that. But this is a comprising claim. The question is not whether you have to perform all of the steps of the patent as recited. Of course, you have to perform all of the steps of the patent exactly as recited. The question is can you do more? That's been answered many, many times. In the Sun-Tiger case, it was said it is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. So here, we completely agree. You will have to have a probabilistic model of normal computer usage which is generated from what we'll call normal records. If you don't have that, you won't be infringing this patent. The question is can you do something else, too? Can somebody take that invention and say, you know what? I've got an add-on that will make that even better. I'll give you an example. What the patent talks about here is essentially finding deviations, so to speak, from normal accesses to the registry. Not every one of those is going to be malicious. They'll just be deviations. Some will not be malicious. Some will be malicious. Somebody could come along and say, I've got a better mousetrap because I'm going to now add on data about what's malicious and what's not. And I'm going to look at what you've figured out using this patent claim and refine it further to help me establish this is bad, this is not bad. That's the problem with the district court's claim construction. It comes up mostly, Your Honor, in the ruling for clarification where we asked them, did you really mean only? And the district court said, yes, I meant only. It's the only thing you can do. The claim becomes a closed set. And that's the problem with the 084 patent family. The problem with the 115 and 322 patent family is that the court literally took words like attack-free and computer system usage, which appear nowhere in the specification or the prosecution history, and just brought them over and talked about defining the term anomalous as requiring attack-free data. Well, the major problem with that would be Claim 8 and Claim 18 and Claim 29 and Claim 39, all of which say the exact same thing. They're all dependent claims to the independent claims of the patent. And they all say the model reflects attacks against at least a part of the program. And the first rule of claim construction is that you start with the words of the claims. Starting with the words of the claims there, it's very hard to come up with an attack-free model of computer system usage when you have claims that expressly recite including attack data in the model. But it's actually, remember, in that patent, a different model. It's a model of function calls, whereas in the 084 patent, you're dealing with something completely different, which is a probabilistic model of normal computer usage, which looks at accesses to the Windows registry. You've exceeded your rebuttal time. We'll restore two minutes. Let's hear from you. Thank you. Good morning, Your Honors. Dave Nelson on behalf of Symantec. May it please the Court. So let me begin with the 084 patent, the 084 family. Could you begin with the 115? Yeah, because I think that's where you have the most problems. I understand. The 084 has all that normal language when it talks about generating a model. I don't see anything in the 115 where it talks about using attack-free data or normal data or anything. It just says a model of function calls. So, plus you've got all these dependent claims, which suggest that the model is created using attack data. I'll address that as well. So which would you like being addressed first? Both. It's fine. It's the same question. So in terms of the specification of the patent, you're correct. There aren't statements. There are statements about normal computer system usage, and that's how the model is created. It doesn't use the term attack-free. There are references in the provisionals. They're incorporated by reference to that, but not in the specification itself. Now, and it's correct that we agree, Your Honor, these do not rise and fall together with the 084 family patent, and we weren't saying that it was the same specification, but the 115 family of patents, that specification talks about achieving this invention with this probabilistic anomaly detection system, which is exactly the same system that's described in the 084 patent. It was an earlier patent. It comes out of the same laboratory work, similar. There are some shared inventors, and therefore, of course, there's not as much description of that probabilistic anomaly detection system in the later family of patents, yet it is the same. And, in fact, in the provisional— Judge Hughes and I are both saying we look at the specification for the 115 and the 322, and we don't see a description in there of creating this model excluding attack data. Right, but it does talk about normal computer system usage, and normal computer system usage, the common understanding is that would be attack-free because that's— Well, that's the object of the patent, but the question is how do you get there and what do you use as your model? How do you create your model? Right, that's correct, Your Honor. So, in the provisional application, this is at A1064, it talks about different usage for this probabilistic anomaly detector, one of which is to detect anomalies for the Windows registry, which would be the 084 family of patents, and also for process execution, which is the 115 family of patents. So, in that provisional, it's referring to that same probabilistic anomaly detector and talks about different usages for doing that. So, the way these systems work, in terms of the description, is you want to be able to detect attacks that you've never seen before. So, the way that's done in these systems is to create a model of normal usage, and then when you receive—when you're running the system to try to detect attacks, you compare the received event, whatever that is— Yeah, yeah, but creating a model of normal usage doesn't mean you can't use attack data to create that model, and the problem is you have a pretty good argument with respect to the 084 and 306 that the model is based solely on normal data, but that argument falls apart, doesn't it, with respect to the later two patents, the 115 and 322, particularly in the light of dependent claims. I mean, I don't think you've got any answer to the dependent claims. No, I do have an answer for the dependent claims, Your Honor, and thank you for reminding me to answer that question directly. So, Dependent Claim 8, I believe, is the example of what we're talking about in the 115 patent, and that claim—just so I have it in the language, Your Honor— says the method of Claim 1, wherein the model reflects attacks against at least a part of the program. So, what Columbia has argued is then necessarily Claim 1, which has to be broader than the dependent claim—I agree with that— must be able, at least, to include attack data because the dependent claim says it has to include. That's incorrect. That's an incorrect reading of what Claim 8. And we've offered in the briefs—we made this argument— that when Claim 8 says it reflects attacks, that means that it will show attacks. It will detect attacks. And that isn't just Symantec saying that. It actually shows up in the prosecution history as well. This is at A652627 in response to a rejection under the VU reference, V-U, which is one of the cited references in the 115 patent. The examiner rejected under VU, and it was an obvious mis-103 combination. And specifically with respect to Claim 8, Dependent Claim 8, the examiner says VU does not explicitly disclose the model reflects attacks, via at least a part of the program. It would have been obvious to one of ordinary school in the art at the time of the invention to have modified VU as taught by Chan because the models allow well-known attacks to be detected. So, the examiner read Dependent Claim 8 exactly as Symantec has argued in this case, that what Dependent Claim 8 adds is the notion that it will detect attacks. So, I think counsel said that there could be anomalous behavior, such as modification of operating system files that may be normal, but wouldn't show up in the initial model of normal computer system usage. So, what Claim 8 says is, yes, in fact, it detects attacks. So, that doesn't create a claim differentiation problem at all, Your Honor. I think that's why this court's precedent says that claim differentiation is a guideline and not a hard and fast rule because oftentimes there are facts such as these where claim differentiation doesn't give you guidance because there is a very natural reading of Claim 8 that was also the same reading the examiner came up during the prosecution  that maintains the description of this probabilistic anomaly detection system and how these models are trained, that they're created. And Columbia agrees with this, that anomalous, the normal meaning of anomalous is a deviation from normal. That's at page 25, I believe, of their reply brief. So, there's no dispute that that's the common meaning of anomalous. And then the question becomes, what is normal? And in the specification of these patents and in the prosecution, excuse me, not the prosecution history, in the provisionals that are incorporated by reference, the discussion of what normal computer system usage is, is directly consistent with the discussion in the 084 family of patents because it's the same probabilistic anomaly detection system that you're using, only as the provisional says, applied in a different context, meaning to a different aspect of computer system usage rather than registry, used to X, which is what the 084 family of patents. This is program execution. So, where does the specification with respect to these latter two patents say that you are excluding the TAC data from the creation of the model? The specification of the 115 of the issued patent doesn't use the term, uses the term normal, and it's created from normal. And it also talks about in column, I believe it's in column 4, where it talks, in this patent, Your Honor, just to be clear, it's really only in columns 4, 5, and a little of 6 where they're talking about the creation of the model. A lot of the rest of the patent deals with patches and fixes to code and repairing or recovering from errors. But in that section of the patent, in column 4, it talks about probabilistic anomaly detection algorithm can be used to train a model for detecting anomalies. This model may be, in essence, a density estimation where the estimation of density function P of X over normal data allows the definition of anomalies as data elements that occur with low probability. Meaning, you define anomalies as those things that are not normal, which is exactly what Columbia agrees is the normal definition of anomalous. So, going back to the way these systems are described to work, Your Honor, and the explicit discussion in some of the provisional applications, if you include attack data, now that attack data, by definition, becomes the norm. Such that when it appears again, the teaching of these patents, and you're running these systems to try to detect attacks, what you end up with is a situation where that will be perceived by the probabilistic anomaly detection system as normal I don't understand that. That doesn't make any sense to me. You use the attack data to scrub out things that might otherwise seem to be normal, but that could be attacks. It's not that your model suddenly isn't determining what's normal. The patent does talk about that. The patent talks about adjusting the threshold, for example. In other words, so you have your model, Your Honor, and you would, according to this statement, you would look at a particular event. This is while the computer is running and trying to protect against attacks. You would look at a particular event. You would say, oh, this is a low probability event based on my model. Now, it may be a situation where that's a, you're installing a new file for the operating system, which didn't occur during your training phase, the creation of the model. And so what the patent says is that you can go ahead, because you know that's not an attack, you can ignore those things. So I agree that the patent talks about the fact that you may be able to use knowledge of attacks in order to adjust the threshold, in order to do things like repair other sections of the code that have the similar vulnerabilities that you've detected attacks on before. But none of those sections talk about using attacks to change the model. And the provisional applications in particular, or the papers that are incorporated with the provisional applications, explain that doing so creates a problem, because if that attack data, Your Honor, is part of the model, then it's perceived as normal. Because you're creating a situation with the model, the way this works is... I don't understand why that's true. I mean, you create a model, let's say, using normal data, and then you use attack data to say, well, one feature of this normal data is not really normal data. It's a feature of attack data, so we're going to take that out of our model. But there's no teaching in the patent of that, Your Honor. That's what I'm saying. But you were saying that, logically, it would result in a model of attack data rather than normal data. And I've given you a way that attack data can be used to tweak the model on what's normal. But in your example, Your Honor, the attack data would not be used to create the model. So, in other words, it wouldn't be part of the data set that's used to create the model in that example. And that's what we're talking about here. So, and again, according to the teaching of the patent, the situation that you've just described would be part of the adjustment of the threshold in determining when things are flagged as anomalies, whether I'm going to sound an alarm and have that be flagged as an attack. But that isn't, according to the teaching of the patent, a modification of the model itself, which still consists of normal data. Okay. So, I don't... I'd like to address one thing that counsel said with respect to the 084 patent, if I may. Columbia's basic... So, I don't think that they disagree that there in that patent, the model of normal computer system usage needs to be created from attack-free data. What they're saying, as well as a comprising claim, that so, therefore, you can use other things. So, I think they cited Sun Tiger. The problem with that is you can't, by virtue of the fact that it's a comprising claim, reach into each and every element and change the element. The problem is the 084 patent specification defines very clearly that the model of normal computer system usage is created from attack-free data. And so, what the district court merely recognized is you can't then use attack data to create the model and still meet that element. That's where the only came from. So, the motion to clarify, I think counsel has... Columbia seems to be confusing the issue slightly in that the issue there was not, can I use attack data for something else? For example, I just gave you one where you would be adjusting the threshold runner. That's a completely separate question. What was stipulated to the summary judgment that was stipulated to and the claim construction before the district court is whether, in creating the model of normal computer system usage, you can use attack data. And the district court said no because that would obliterate that element. And that's what the real issue is. So, the Sun Tiger case doesn't apply in the sense that there the issue was, well, you applied this gray coding and that changed the transmissivity characteristics of the lens except for this one little piece on the lower right corner. And we're going to remand for the determination as to whether that's enough for infringement. That's not what we're talking about here. What we're really, this is more like the Dippin' Dots case where, you know, the question, there was an element that required formation of beads. And the accused product, it happened to make some beads, but it also made other non-spherical shapes. And the agreement was beads are, that's a spherical shape. And there this court said, yeah, you can't use a comprising thing to reach in the element and obliterate the element that says creating beads from this. So, that's exactly what we have with the 084 patent, Your Honor, which is a situation where Columbia is trying to use the comprising argument to reach in and obliterate the requirement of creating the model of normal computer system usage. Thank you. Thank you. Two minutes. Your Honor, the specification of the 544 patent fundamentally negates the proposition that byte sequence feature is limited to machine code. You can find that in Column 3. Could you respond to his argument on the 115 patent? I'm sorry? Can you respond to his argument on the 115 patent? Your Honor, I barely followed it because... Let me help you. Let me tell you what I understand what he's saying. He's saying that the model is composed of attack-free data but that in shaping the model, you can use attack data. I think you would then have to read claims with almost the same language in different ways because remember that the dependent claims come in pairs, one referring to the model reflecting normal data, the other referring to the model reflecting attack data. I assume they mean the same thing in each dependent claim. They use the exact same words. Would you be satisfied with an interpretation that says that the model has to incorporate only normal data but that in shaping the model, you can use attack data? Where will you find that in the claims? That kind of limitation is found nowhere in the claims. The claims have dependent claims which refer to normal data being reflected and attack data being reflected. It's the exact same language. They both can be reflected. Your Honors, I do very much want to return to give me just a moment to speak to the 544 because the specification really does conclusively negate a conclusion that byte sequence feature means machine code instructions. It is, in fact, in the paragraph discussing the preferred embodiments in the patent. It's in column 3 at lines 37 to 40. According to another embodiment, extracting the byte sequence features from the executable attachment may comprise creating a byte string representative of resources referenced by said executable attachment. There is no dispute between the parties that a byte string representative of resources referenced by said executable attachment includes a lot of stuff that's not machine code. That preferred embodiment is excluded from the patent by the definition. This is from the final specification. Moreover, in the discussion about byte sequence feature in the final specification, it says, and I'll read you the language that's in those final. Why don't you give us the site because your time is well over so we don't need you to read what's already there. If you look at column 13, 24 to 26, you'll see where it says byte sequence is useful because it represents machine code and executable. And the next sentence says, in addition, this approach involves analyzing the entire binary rather than portions such as header, an approach that consequently gives a great more deal of information. That's the second sentence that's in the provisional which talks about looking at the entire binary. Hexdump looks at the entire binary, not just machine code. Thank you. Thank you. We thank all counsel on the case.